PETITION UNDER USC § 2255 TO VACATE, SET AS[illegible], OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

AO 243 (Rev. 2/95)

| UNITED STATES DISTRICT COURT | District: District of Rhode Island, 1st. Cir. | |
|---|---|---|
| Name of Movant: Oscar Caba | Prisoner No.: 04697-070 | Case No.: 00-1493 |
| Place of Confinement: Federal Medical Center, Devens, P.O. Box 8[illegible], MA 01432 | | |

CA 05 026 T

UNITED STATES OF AMERICA V. Oscar Caba

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack District of Rhode Island, Federal Building, Providence Rhode Island 02903

2. Date of judgment of conviction December 21, 1999,

3. Length of sentence 293 months

4. Nature of offense involved (all counts) count 1, Conspiracy to possess with intent to distribute Heroin in violation of 21 U.S.C. §841 (a)(1) and 21 U.S.C. § 846; ~~Count 2, Conspiracy to possess with intent to distribute cocaine in violation~~ of 21 U.S.C. §841 (a)(1) and 21 U.S.C. §846; Count 3, Distribution of 9.6 grams ~~of heroin in violation of 21 U.S.C. §841 (a)(1) and (b)(1)(C) and 18 U.S.C.~~ §2; Count 4, possession with intent to distribute 25.8 grams of heroin in ~~violation of 21 U.S.C. §841 (a)(1) and (b)(1)(C) and 18 U.S.C. §2; Count 5~~ possession with intent to distribute 934 grmas of cocaine in violation of 21U.S.C. §841 (a)(1) and (b)(1)(B) and 18 U.S.C. §2.

5. What was your plea? (Check one)
   - (a) Not guilty ☒
   - (b) Guilty ☐
   - (c) Nolo contendere ☐

   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

FILED
JAN 26 2005
U.S. DISTRICT COURT
DISTRICT OF RHODE ISLAND

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   - (a) Jury ☒
   - (b) Judge only ☐

7. Did you testify at the trial?
   Yes ☐ No ☒

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐



(1)

AO 243 (Rev. 2/95)

9. If you did appeal, answer the following:

(a) Name of court United States Courts of Appeal for the First Circuit

(b) Result Affirmed

(c) Date of result March 2, 2001

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any federal court?

Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:

(a) (1) Name of court ______

(2) Nature of proceeding ______

(3) Grounds raised ______

(4) Did you receive an evidentiary hearing on your petition, application or motion?

Yes ☐ No ☒

(5) Result ______

(6) Date of result ______

(b) As to any second petition, application or motion give the same information:

(1) Name of court ______

(2) Nature of proceeding ______

(3) Grounds raised ______

AO 243 (Rev. 2/95)

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☒X

(5) Result ____________________

(6) Date of result ____________________

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc. Yes ☐ No ☒X
(2) Second petition, etc. Yes ☐ No ☒X

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

The Court Appointed Attorney Brian M. Glover, claimed that there were no issues which could be raised to the Supreme Court, he failed to do any proper investigation into my case, he was ineffective as counsel.

SEE ATTACHED 2255 Motion

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.

Caution: If you fail to set forth all grounds in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

AO 243 (Rev. 2/95)

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.
(i) Denial of effective assistance of counsel.
(h) Denial of right of appeal.

A. Ground one: (i) I was denied effective assistance of counsel at trial and upon direct appeal. See Attached 2255 Motion

Supporting FACTS (state *briefly* without citing cases or law)
See Attached 2255 Motion

B. Ground two: The Court denied Appellant effective assistance of counsel I submitted a motion to the District Court to have my counsel removed because of conflicts between Appellant and counsel and because his ineffectiveness and I was told by the Court to go to trial with that counsel

Supporting FACTS (state *briefly* without citing cases or law) or face trial alone. see Attached 2255 Motion.

C. Ground three:

Supporting FACTS (state *briefly* without citing cases or law)

D. Ground four:

Supporting FACTS (state *briefly* without citing cases or law)

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state *briefly* what grounds were not so presented, and give your reasons for not presenting them:

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?

Yes ☐ No XXX

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a) At preliminary hearing Michael C. Judge Moved from old office new address not known.

(b) At arraignment and plea

(c) At trial Same as above.

(d) At sentencing Same as above

AO 243 (Rev. 2/95)

(e) On appeal Brian M. Glover, P.O. Box 890084, Weymouth, MA. 02189
Tel. No. (508) 990-4555

(f) In any post-conviction proceeding

(g) On appeal from any adverse ruling in a post-conviction proceeding

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?

Yes ☒X No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

Yes ☐ No ☒X

(a) If so, give name and location of court which imposed sentence to be served in the future:

N/A

(b) Give date and length of the above sentence:

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

Yes ☐ No ☒X N/A

Wherefore, movant prays that the Court grant petitioner relief to which he or she may be entitled in this proceeding.

Signature of Attorney (if any)

Oscar Caba, Pro-Se Defendant-Appellant
Reg. No. 04697-070
Federal Medical center, Devens
P.O.Box 879

I declare under penalty of perjury that the foregoing is true and correct. Executed on Ayer, MA. 01432

January 21, 2005
(Date)

Oscar Caba
Signature of Movant

FILED

UNITED STATES DISTRICT CO F
DISTRICT OF RHODE ISLAND
1St. CIRCUIT COURT

Oscar Caba,
Reg. No. 04697-070
Defendant-Appellant,

Vs.

The United States of America,
The 1st. Circuit District
Court District of Rhode Island,

Plaintiff-Respondent.

No. 00-1493

CA 05 026T

DEFENDANT-APPELLANT's MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO VACATE, SET ASIDE, OR CORRECT HIS SENTENCE PURSUANT TO TITLE 28 U.S.C. §2255

**NOW COMES DEFENDANT-APPELLANT**, Oscar Caba, Pro-Se, and respectfully files this Memorandum of Points and Authorities in support of his Motion to Vacate, Set Aside, or Correct his sentence pursuant to 28 U.S.C. §2255. The thrust of Defendant-Appellant's argument is that without jury findings, plead to by Defendant-Appellant's or agreed to by Defendant-Appellant in a plea agreement as to predicate violations. Defendant-Appellant's sentence of 293 months violates due process of law and Defendant-Appellant's Constitutional Rights under the States Constitution and the United States Constitution, in violating this Defendant-Appellant's Fifth, Sixth, and Fourteenth Amendments.

This application raises several questions of Constitutional, Statutory, Evidentiary, and Procedural Law. Some of the issues are complex or novel. The sentence imposed upon Petitioner exceeds the Statutory Guideline Maximum, the issue in this application are

challenging and e stakes are high, Defend -Appellant prays that this Court entertain an evidentiary hearing to further develop the record.

Following the question of whether Defendant-Appellant has alleged Constitutional error, it is respectfully asked that this Honorable Court construe this Pro-Se application liberally. **See, Haines Vs. Kerner, 404 U.S.C. 519, 520-521 (1972) (per curiam).**

## I.

## ISSUES PRESENTED IN SUPPLEMENTAL BRIEF

**THE SUPREME COURT DECISION*S OF APPRENDI Vs. NEW JERSEY; RING Vs. ARIZONA; AND BLAKELY Vs. WASHINGTON REQUIRES REVERSAL OF THIS DEFENDANT-APPELLANT'S SENTENCE, BECAUSE IT IS BASED IN PART ON FACTS NEITHER ADMITTED BY THE DEFENDANT-APPELLANT NOR IN THE INDICTMENT, OR FOUND BEYOND A REASONABLE DOUBT BY A JURY, AND ON CHARGES THAT THE DEFENDANT-APPELLANT WAS AQUITTED ON BY A JURY WHICH ARE ALL IN VIOLATION OF THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS.**

## II

## INTRODUCTION

The sole issue in this Motion Pursuant to Title 28 U.S.C. §2255, pertains to the enhancements of this Defendant-Appellant's sentence Pursuant to U.S.S.G. §841(a)(1); §846, §2D1.1(c)(4). In light of the Supreme Court decision in **Blakely Vs. Washington, 124 S.Ct. 2531, 2004 Wl 1402697 (June 24, 2004)**, this Defendant-Appellant request that this Honorable Court remand this case back for the purpose of considering this Defendant-Appellant's sentence in light of **Apprendi Vs. New Jersey; Ring Vs. Arizona; Blakely Vs. Washington; and now the Booker and FanFan Vs. United States Of America.**

III

## STATEMENT OF THE CASE

1. On March 26, 1999, Defendant-Appellant was arrested and on April 14, 1999, a Federal Grand Jury in the District of Rhode Island indicted Defendant-Appellant with a 3Count indictment, which was superseded on May 26, 1999, with a Six Count indictment, Count One charged that defendant-Appellant conspired with Mr. Manolo Vargas to possess with intent to distribute heroin in violation of 21 U.S.C. §841 (a)(1) and 21 U.S.C. §846; Count Two charged that Defendant-Appellant and Mr. Vargas conspired to possess with intent to distribute cocaine in violation of 21 U.S.C. §841 (a)(1) and 21 U.S.C. §846; Count Three charged that on or about Feb. 10, 1999, Defendant-Appellant and Mr. Vargas distributed 9.6 grams of heroin in violation of 21 U.S.C. 841 (a)(1) and (b)(1)(C), and 18 U.S.C. §2; Count Four charged that on or about March 26, 1999, Defendant-Appellant and Mr. Vargas possessed with intent to distribute 25.8 grams of heroin in violation of 21 U.S.C. 841 (a)(1) and (b)(1)(C) and 18 U.S.C. §2; Count Five charged that on or about March 26, 1999, Defendant-Appellant and Mr. Vargas possessed with intent to distribute 934 grams of cocaine in violation of 21 U.S.C. 841(a)(1) and (b)(1)(B) and 18 U.S.C. §2; Count Six charged that on or about March 26, 1999, Defendant and Mr. Vargas possessed with intent to distribute 143.7 grams of cocaine base and/or crack cocaine in violation of 21 U.S.C. §841 (a)(1) and (b)(1)(A) and 18 U.S.C. §2. All of the charges were alleged to have occurred in the District of Rhode Island.

2. On December 21, 1999, Defendant-Appellant was convicted by a Jury after trial on Counts One, Two, Three, Four, and Five, Defendant-Appellant was aquitted on Count Six Cocaine Base and/or

Crack Cocaine.

3. On March 31, 2000, Judge Ernest C. Torres, sentenced Defendant-Appellant to 293 Months of Imprisonment and Eight years Supervised Release. On the same date of March 31, 2000, Defense Counsel filed Notice of Appeal with the Court.

**DEFENDANT-APPELLANT CAN ESTABLISH "CAUSE AND PREDJUDICE" FOR PROCEDURAL DEFAULT**

4. Defendant-Appellant asserts that he can establish "cause and prejudice" excusing his procedural default thus, giving this court jurisdiction to entertain and re-determine these issues which were previously denied upon direct appeal. However, before canvassing the facts sustaining Defendant-Appellant's case. Defendant-Appellant first wishes to commend the following cases in support of his contentions; that in light of a recent Supreme Court decision this Court has the jurisdiction to lawfully re-determine the merits of these previously denied issues in this now Motion to Correct Defendant-Appelant's Sentence Pursuant to Title 28 U.S.C. §2255.

5. The Supreme Court has observed that "cause" would be established by a showing that (1) the factual or legal basis for a claim was not reasonably available to counsel; (2) that some interference by officials made compliance impracticable; or (3) the procedural default was the result of constitutionally ineffective assistance. Defendant-Appellant establishes "cause" where the full legal basis for this Motion was not available to defense counsel in that defendant-Appellant's arguments have recently been further developed by the Supreme Court's decision in Blakely Vs. Washington 124 S.Ct. 2531, 2004

WL 1402697 (June 4, 2004). Defendant-Appellant's arguments also include violation which are developed by the prior decisions by the Supreme Court in Apprendi Vs. New Jersey; Ring Vs. Arizona, and in the recently argued Booker and FanFan Vs. United States of America, which recently was heard in October, 2004, by the Supreme Court.

6. Defendant-Appellant establishes "prejudice" where the Court enhanced Defendant-Appellant with facts that were never admitted by this Defendant-Appellant by plea or agreement, or found guilty to by a jury beyond a reasonable doubt, in fact Defendant-Appellant was enhanced on the cociane base and/or crack cocaine, a charge which the jury aquitted the Defendant-Appellant of the only count in the indictment charging the Defendant-Appellant with cocaine and/or crack cocaine., Defendant-Appellant establishes "cause" where defense counsel failed to represent defendant in a proper manner therefore acting as ineffective assistance of counsel, and finally that the jury did not prove beyond a reasonable doubt that Defendant-Appellant was guilty to receive such a harsh sentence.

7. Therefore Defendant-Appellant needs to be resentence with out the use of certain enhancements, and to have the enhancement that were given on an aquitted charge removed, to receive such an enhancement on crack cocaine without being aloud to exercise your constitutional right is flatly illegal under the Sixth Amendment to the United States Constitution. The Sixth Amendment requires that a jury determine beyond a reasonable doubt by clear and convincing evidence all facts legally essential to Defendant-Appellant's sentence that was imposed by the District Court as being harsh and illegal.

8. Defendant-Appellant points to the Fourth Circuit's colleagues in the Eleventh Circuit where the Court explained that the "ends of justice" which requires reconsideration, is determined by objective factors, such as "whether there was a full and fair hearing on the original Appeal and/or petition or whether there was an intervening change in the facts of the case or the applicable law." The Eleventh Circuit found that a "colorable showing of factual innocence" is the test, or the test is whether the alleged error precluded the development of the true facts or resulted in the admission of false ones, on a material question involving the sentence, the result is the same.

9. Defendant-Appellant argues that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or Laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence."

10. Defendant-Appellant also asserts that "Unless the motion and the files and records of the case conclusively show that the Defendant-Appellant is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of facts and conclusions of law with respect thereto. If the court finds that the judgment was rendered without jurisdiction, or that there has been such a denial or infringement of the constitutional rights of the Defendant-Appellant as to render the judgment vulnerable

to collateral attack, the court shall vacate and set the judgment aside and shall discharge the Defendant-Appellant or re-sentence him or grant a new trial or correct the sentence as may appear appropriate."

11. Respectfully, with the foregoing and instructive passage now to the side, the following facts and law should convince this Honorable Court that this Defendant-Appellant has established a colorable showing of factual innocence entitling him to a re-determination of his issues resulting in immediate relief from his present sentence of imprisonment.

## ISSUE I

### WHETHER DEFENDANT-APPELLANT'S DEFENSE COUNSEL WAS IN FACT EFFECTIVE OR INEFFECTIVE IN HIS ASSISTING IN THE DEFENSE OF DEFENDANT-APPELLANT'S CRIMINAL CASE

**Ineffective Assistance of Counsel Claim:**

12. Attorney Michael C. Judge, was ineffective in that he failed to object to the **"Cocaine Base and/or Crack Cocaine"**, being used against the Defendant-Appellant, during sentencing as an enhancement factor, especially when this charge was niether proven beyond a reasonable doubt, agreed to by plea agreement, nor admitted to by Defendant-Appellant in open Court. The true fact is that this was the only charge in the indictment that mentioned Cocaine Base and/or Crack Cocaine, which was count six of the indictment and Defendant-Appellant was aquitted of this charge. Defendant-Appellant also raised the issue in open court that he was not satisfied with his Attorney and he wanted Attorney Michael C. Judge removed from representing me, Defendant-Appellant was forced by the court to continue with this Attorney or go to trial without an Attorney. All the above mentioned is part of the record, and is in violation of

Defendant-Appell( )'s Constitutional Rights have effective assistance of Counsel present at my trial. **See page 12 3.**

13. On Wednesday, April 14, 1999, Agent K. Kelleher gave testimony in front of the Grand Jury in where she states that on March 26, 1999, Defendant-Appellant was arrested. On page 8 of the transcript lines 7 through 20, Agent Kelleher explains how the first thing they do when they went into the home of Manolo Vargas was go to the bedroom where he was sleeping and they brought him out to the kitchen, in where they read him his rights and placed him under arrest, then they asked him was there anything in the home, Vargas told them that it was in the bathroom between the shower stall and the window. The agents immediately went into the bathroom and between the shower stall and the window like Mr. Vargas claimed they found 900 grams of a white powder which they immediately completed a field test on and it resulted to be Heroin. **See Exhibit "A"**

14. On page 9 of the same transcript mentioned up above, agent kelleher from line 5 through 11 states that they continued to search throught the house and in the back bedroom in where Mr. Vargas was sleeping in the back of an old console T.V. they found a zip-loc baggy which contained approximately 147 grams of crack cocaine, and another 68 grams of powder cocaine. Agent Kellēher also states that in the closet of the same bedroom they found a large white shopping bag and that it contained the following items two electric grinders, a scale, two sifters, small spoon, a box of baggies, bags of rubber bands, six pads of bright colored paper, two containers of mannite, three baggies of mannite, one bottle of inositol, a digital scale, three tape dispensers, and nine rolls of scotchtape. There was no mention of any drugs found in this shopping bag, the only drugs found in this house were found in the bathroom which was in the form of
**See Exhibit "B"**

a white powder which came back to be Heroin after a field test was conducted and it was about 900 grams. And in the bedroom they found inside an old console T.V. 147 grams of crack cocaine and 68 grams of powder cocaine, that's it for the drugs found in this house as stated on Wednesday, April 14, 1999, to a Grand Jury Proceeding that was held in the District Court of R.I. In the Federal Building room 407, at Providence Rhode Island. **See Exhibit "B"**

15. Page 10 lines 10 through 16, Agent Kelleher states that there were finger prints recovered and that they positively identified Oscar Caba's # 8 finger, which would be the middle finger on Defendant-Appellant's left hand, this finger print was found to be on the bottom of one of the pads of bright color paper. Now Defendant-Appellant argues that defense Counsel was ineffective in that if he had conducted any investigations into this allegation of where the finger print was found, he would had seen it very impossible to only have one finger print on the bottom of this pad of paper, first defendant-Appellant is right handed, so when he grabs or pick up things he uses his right hand, and even if this Defendant-Appellant would had used his left hand to handle this pad, then how is it that he only held it with one finger. It is impossible to hold on to any pad, or even just one piece of paper with just your middle finger with out placing a finger on top to hold it from falling, so where is the rest of the finger prints, defense counsel should had investigated this issue and put it through the test at trial. **See Exhibit "C"**

16. Now after all of this testimony by Agent Kelleher to the Grand Jury, the only finger print was found in a pad of colored paper in a shopping bag in the closet of the bedroom, where there was no drugs found, her testimony states that the drugs in that same room in where the shopping bag was found, were found in the back

of an old conso T.V. and in the bathroom

17. Now in a Superseding Indictment held in the District Court for Rhode Island on Wednesday, May, 26, 1999, Room 407, Agent Kelleher's testimony changes and/or contradicts her prior testimony that was given to the Grand Jury.

18. . Agent Kelleher, on page 4, lines 1 through 9, Agent Kelleher now states to have found two baggies containing heroin, one of the baggies contained 22.2 grams the other contained 3.6 grams of heroin for a total of 25.8 grams of heroin in contradiction to her prior testimony of April 14, 1999, in where she stated to the Grand Jury that they found 900 grams of heroin in the bathroom, and that no other drugs were found in the bathroom. But on this date of May 26, 1999, now she claims on page 4, lines 16 through 20 to have also found a towel with numerous bags of an off white powder which tested to be 867.1 grams of cocaine. Defense Counsel should had picked up on these contradictions and questioned them, it is very possible that this can be concluded to be harm less error, but how can some one forget to mention on prior testimony that more than one type of drugs were found in the bathroom. This clearly shows that defense counsel never investigated any of the testimony that was being offered and/or that he was unprepaired for trial and clearly unprepaired to put up a defense for his client.
**See Exhibit "D"**

19. Agent Kelleher also states on Page 5, of the superseding indictment that she made a mistake, when she tested the heroin that was found in the bathroom and the cocaine that was found in the towel in the bathroom, she now believes that she used the same spoon on both test that were done, and that she must of tested the heroin first then the cocaine and that is the reason she states both tests
**See Exhibit "E"**

came back positiv for heroin, can this also be conscured to be harmless error, well maybe then that will be the second harmless error that Agent Kelleher makes and the second that my defense counsel fails to object to or investigate in order to defend my case at trial. **See Exhibit "E"**

20. This is the excuse that Agent Kelleher offers to the Grand Jury in why she came up at first with 900 grams of heroin, but yet at the begining of her testimony she offers all the cases she has worked on and all her experiance in drug cases, but yet she can not tell the difference between drugs in a towel and ones in a baggie, now she claims that because her error that is why there is 25.8 grams of heroin and 867.1 grams of cocaine. Back in April it was never claimed that their were two different location in where drugs were found in the bathroom, but only 900 grams were found in the bathroom between the shower stall and the window. Defense Counsel was unprepaired to defend this case, and the Court appointed Attorney that was supposed to handle my appeal was also ineffective because he failed to see these contradictions and addressed them in the appeal.

21. At page 9 lines 20 through 24, Agent Kelleher, states that they found two latent fingerprints obtained from one of the shopping bags in where some of this 867.1 grams of cocaine from the Ames Shopping bag. The fingerprint developed identified the Defendant-Appellant, Oscar Caba. But on April 14, 1999, in agent Kelleher's testimony their was only one shopping bag found and there was no mention of any drugs being found in the shopping bag, the 867.1 grams that were claimed to be tested and found to be heroin and it was claimed to be 900 grams were found in the bathroom, there were also 147 grams of Crack Cocaine and 68 grams of powder cocaine found in the inside of an old console t.v., now agent Kelleher contradicts herself again the government will

**See Exhibit "F"**

state that this i( )ll harmless error and tha it causes no harm to the Defendant-Appellant, Oscar Caba, but this is only another harmless error which makes number 3, but yet my counsel lets it go and does not object to its use. **Exhibit "F"**

22. Agent Kelleher gave testimony that defense counsel should had attacked and gotten dismissed as hearsay evidence, and he should of re cross examine Agent Kelleher, upon her statements on page 6 lines 10 through 16 on the transcript of the Grand Jury minutes. which are stated at. [1]

23. Defense Counsel was ineffective, because he failed to/or tried to get indictment dismissed upon Agent Kelleher's contradicting statements made to a Grand Jury, statements that clearly show that Agent Kelleher was either lying or just forgetful on the accounts that took place in the case in questioned. Either way the government will argue that these are all harmless errors on their part, but they are also errors on the part of my defense counsel for not attacking such harmless errors.

24. How many harmless error does it take to prejudice Defendant-Appellant and constitute a error which has harmed Defendant-Appellant, How many times must my counsel show that he was incompetent and ineffective. [2]

---

2 Sager V. Maass 84 F.3d 1212 (9th Cir. 1996) Counsel was found ineffective for not oobjecting to inadmissible evidence.

Carter V. Bell 218 F.3d 581 (6th Cir. 2000) Failure to investigate mitigating evidence was ineffective assistance of counsel.

Lockett V. Anderson 230 F.3d 695 (5th Cir. 2000) inadequate mitigating investigation by defense counsel was ineffective assistance.

1 Page 6 of Grand Jury Transcript; Lines 6 through 16;
Q - Did you or other agents conduct any surveillances of 95 Ring Street in an attempt to see who was entering and leaving that particular house?

---

A - Yes Sir.

Q - And did you or other Agents ever see Oscar Caba entering or exiting 95 Ring Street on dates other than Feb. 10, 1999?

A - Yes Sir.

Q - How many other times?

A - On March 11, 1999 and March 17, 1999.

---

25. Agent Kelleher refers to Defendant-Appellant, Oscar Caba, as being under surveillance, by her and other agents that were part of the surveillance team at 95 Ring Street; But yet it is funny that not one of the other members of the surveillance team ever seen me or were able to recognize me as ever seening me leave or enter 95 Ring Street.

26. That defense counsel never attacked this issue at trial or even investigated this issue, making him ineffective and unprepaired to defend this Defendant-Appellant at trial or at any stage of any proceeding that would had taken placed. Is this another harmless error, if it is then this will make harmless error number 4.

---

**3 Hunt V. Mitchell 261 F.3d 575, [No. 99-4308] United States Court of Appeals, (6th Cir.) (August 22, 2001)The Court of Appeals, Cole, Circuit Judge, held that: (1) rule of presumed ineffectiveness of counsel was clearly established federal law; (2) Petitioner was deprived of counsel during pre-trial period, so that he was entitled to presumption of ineffectiveness of counsel; and (3) circumstances surrounding appointment of defense counsel were sufficiently egregious as to warrant presumption of ineffective assistance of counsel. The Supreme Court has decided several cases that make clear that the period between appointment of counsel and the start of trial is indeed a "Critical stage" for Sixth Amendment purposes. The pre-trial period constitutes a "Critical Period", because it encompasses counsel's constitutionally imposed duty to investigate the case.**

**Criminal Law (key) 641.12(1); Where counsel has no acquaintance with the facts of the case or has done proper investigation of the case and no opportunity to plan a defense, the result is that the defendant is effectively denied his constitutional right to assistance of counsel. U.S.C.A. Constitution Amendment 6.**

---

27. Defendant-Appellant argues that if defense counsel and/or Court appointed attorney for appeal would had defended this case with proper investigation done into the case, they would had been better prepaired to handle the case in a proper effective manner, but they decided to ignore certain issues and they did not question agent Kelleher on her prior testimony that was given to the Grand Jury on two prior occasions with each testimony contradicting each other. This was clearly an abuse of the Attorneys to their duties towards their client Defendant-Appellant.[4] It also constitutes another harmless error as the government might call it, to make it error number 5.

28. That defendant-Appellant was indicted and found guilty after trial of the following offenses which each carried a sentence of the following: (a) Count 1, Conspired to Distribute Heroin in Violation of 21 U.S.C. §841(a)(1) and §846.[5]; Count 2, Conspired to distribute Cocaine in violation of 21 U.S.C. §841(a)(1) and §846.[5]; Count 3; Distributed 9.6 grams of heroin on Feb. 10, 1999, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C) and 18 U.S.C. §2.[6]; Count 4, Possessed with intent to distribute 25.8 grams of Heroin, in violation of 21 U.S.C. §841(a)(1) and (b)(1)(C) and 18 U.S.C. §2.[6]; Count 5, Possessed with intent to distribute 934 grams of Cocaine in violation of 21 U.S.C. §841(a)(1) and (b)(1)(B) and 18 U.S.C. §2.[7]; Count 6, Possessed with intent to distribute 143.7 grams of Cocaine Base and/or Crack Cocaine in violation of 21 U.S.C. §841(a)(1)(b)(1)(A) and 18 U.S.C. §2.[8]

---

5 **(a) Unlawful Acts, Except as authorized by this subchapter, it shall be unlawful for any <u>person</u> knowingly or intentionally -- (1) To manufacture, distribute, or despense, or possess with intent to manufacture, distribute, or despense, a controlled substance; §846 Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as prescribed for the offense, the commission of which was the object of the attempt or conspiracy.**

6 (b) Penalties, Ex__t as otherwise provided in sec__n 859, 860, or 861 of this title, any person who violates subsection (a) of this section shall be sentenced as follows: (1)(C) In the case of a controlled substance in schedule I or II, or 1 gram of flunitrazepam, except as provided in subparagraphs (A),(B), and (D), such person shall be sentenced to a term of imprisonment of not more than "20 years" and if death of serious bodily injury results from the use of such substance shall be sentenced to a term of imprisonment of not less than 20 years or more than life, a fine not to exceed the greater of that authorized in accordance with the provisions of title 18, or $1,000,000 if the defendant is an individual or 5,000,000 if the defendant is other than an individual, or both. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such a person shall be sentence to a term of imprisonment of not more than 30 years.

7 (b) Penalties, same as above stated, (1)(B) In the case of a violation of subsection (a) of this section involving -- 500 grams or more of a mixture or substance containing a detectable amount of coca leaves and extracts of coca leaves from which cocaine have been removed. Such person shall be sentenced to a term of imprisonment which may not be less than "5 years" and not more than 40 years, if any person commits such a violation after a prior conviction for a felony drug offense has become final, such person shall be sentenced to a term of imprisonment which may not be less than "10 years" and not more than life. Any sentence imposed under this subparagraph shall, in the "absence of such a prior conviction, include a term of supervised release of at least 4 years in addition to such a term of imprisonment" and shall "if there was such a prior conviction , include a term of supervised release of at least 8 years"

8 (b) Penalties, same as the above mentioned except as to, (1)(A)(iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base, such person shall be sentenced to a term of imprisonment which may not be less than 10 years of more than life. If any person commits such a violation after a prior conviction for a felony drug offense has become final, such a person shall be sentenced to a term of imprisonment which may not be less than 20 years and not more than life imprisonment. Any sentence under this subparagraph shall, in the "absence of such a prior conviction, impose a term of supervised release of at least 5 years, if there was such a prior conviction, impose a term of supervise release off at least 10 years" In addition to such term of imprisonment.

6 (b)(1)(C), Supervised Release, Any sentence imposing a term of imprisonment under this paragraph shall, in the "absence of such a prior conviction, impose a term of supervised release of at least 3 years, if there was such a prior conviction impose a term of supervised release of at least 6 years in addition to such a term of imprisonment".

---

29. That in looking at the above-mention 21U.S.C. § 841 subchapters it can be determined that this Defendant-Appellant was illegally sentence and enhanced due to a prior conviction and that the terms of supervised release were also illegally imposed based on the prior felony conviction that was used to enhance Defendant-Appellant, that by my defense counsel allowing this with out proper investigation into the case law, and not objecting to this type of enhancement, and

by Defendant-Appellant's court appointed attorney for his appeal not doing any type of investigation or research into the case at hand or into the case law, they both were ineffective as counsel in allowing the court to impose an illegal sentence and supervise release term. [9]

30. That defendant-Appellant was aquitted of Count 6 of the indictment Possessed with intent to distribute 143.7 grams of cocaine base in violation of 21 U.S.C. §841(a)(1)(b)(1)9A) and 18 U.S.C. §2, but yet it was used as relevant conduct in order to enhance Defendant-Appellant, but yet the government never proved or Defendant-Appellant never admitted in open court or at any time, and or found by the jury, any involvement with cocaine base. There were no fingerprints ever found on the crack cocaine as the government have said, [10]. There was never any evidence shown that would implicate this Defendant-Appellant to any Crack Cocaine, there was not even any conversation between the agents, Defendant - Appellant, or Mr. Vargas at any time concerning any purchase or just plain any thing that had to do with crack cocaine, the only time that crack cocaine was ever mentioned was after the arrest of Mr. Vargas when it was found in his apartment. But yet defense counsel allowed this relevant conduct role to be used as an enhancement factor, but also the court appointed attorney that was supposed to do my appeal allowed it to be used and mentioned in the governments response to Defendant-Appellant's Appeal Brief, [10]. Please see attached Exhibits Marked as **Exhibit "G"**

---

9 **Richard Little Vs. United States of America [No. ClV. A. 01-40077RWZ] July 1, 2002 not reported in F. Supp. 2d. Cite as: 2002 WL. 1424581 (D. Mass.) Petitioner sought writ of habeas corpus on basis that his sentence was illegal. The District Court, Zobel. J., held that saving clause permitted review of challenge by petitioner, that enhancement of his sentence due to prior state narcotics conviction, rather than federal narcotics conviction was illegal. Petition Granted; The argument is essentially that § 843(d)(1) provides for an enhanced sentence for defendants with a prior conviction "for a felony under any other provision of this subchapter or subchapter II of this chapter or other law of the United States." A parallel statute, 21 U.S.C. §841, included identical language**

**until it was amended ~~in~~ 1984. That year, the language ~~of~~ §841 was broadened to apply to defendants with a prior conviction "of a felony, under other law of a State, the United States, or a Foreign Country." and later to apply to all defendants with a prior conviction for a felony drug offense. Case Law clearly establishes that, under the original wording of §841, which still governs §843(d)(1) the Government was and is required to prove that the defendant has a prior Federal narcotics conviction in order to enhance his sentence. In order to prevent a complete miscarriage of justice, Defendant-Appellant request that he be remanded for re-sentence.**

**10 The Prosecutor's Brief for Appellee, upon Defendant-Appellant's Appeal Brief. Prosecutor's Appellee's Brief stated as follows on page 1 II, Statesment of Issues, Paragraph 2: Whether the District Court clearly erred in including in its drug weight calculations 143.7 grams of crack cocaine, where (a) the crack constituted part of the inventory of Defendant's drug business; and (b) Defendant was linked to the crack by finger print evidence and other evidence.**

**Please see Exhibit Marked as ( )., Which is attached hereto.**

**10 Testimony of Agent Kathleen Kelleher on April 14, 1999 in front of the Grand Jury for a Superseding Indictment Agent Kelleher testifies to the following: Page 9 lines 20 to 24 and line 1 on page 10: There were also two latent finger prints obtained from one of the shopping bags that some of this 867.1 grams of "Cocaine" from the Ames shopping bag. There were two finger prints that developed that were indentified as Oscar Caba, the Defendant. Also attached Marked as Exhibtit ( ).**

**COCAINE BASE ( RELATING TO BASE OFFENSE LEVEL)**

31. That Defendant-Appellant objected to item #20 in the Pre-Sentencing Report (P.S.I.), which item refers to the "Base Offense Level" to be applied relating to "Cocaine Base". The Jury found that, Defendant-Appellant was "Not Guilty" of Count VI, which involved 143.7 grams of Cocaine Base. The facts that were submitted to the jury during trial, did not established by a preponderance of the evidence that Defendant-Appellant was responsible for any Cocaine Base and as a result Defendant-Appellant was aquitted by the Jury after trial of the charges involving Count VI of the indictment, also Defendant-Appellant niether admitted to any charge involving Cocaine Base and/or Crack Cocaine.

**"THE TESTIMONY AT TRIAL REVEALED THE FOLLOWING TO BE TRUE"**

A) There was no testimony detailing that Defendant-Appellant ever spoke to anyone about cocaine base and/or crack cocaine.

B) There was no testimony detailing that Defendant-Appellant ever engaged in any drug deals especially in dealing with cocaine base and/or crack cocaine.

(C) There wa no testimony detailing th Defendant-Appellant's residence was found to be a place in where any **"DRUGS"** especially **"COCAINE BASE AND/OR CRACK COCAINE"** were stored, sold out of, or where anything was found at the time of the arrest or at any time during their investigations of Defendant-Appellant.

(D) In fact what prior testimony does reveal is that all of the drugs and/or paraphernalia were found at 95 Ring Street which was the apartment of **"Manolo Vargas"** and it was found in the bathroom, the **"Cocaine Base and/or Crack Cocaine"** were found inside a console T.V. that was inside Manolo Vargas's bedroom.

32. Therefore, the 143.7 grams of Cocaine Base and/or Crack Cocaine should had never been used in the calculations to enhance the Defendant-Appellant's Base Offense Level. Such Cocaine Base and/or Crack Cocaine were converted to its marijuana equivalent, which was 2874 kilograms of Marijuana (1 gram of Cocaine Base = 20 kilograms of Marijuana) = 143.7 X 20). These 2874 kilograms of Marijuana were used to enhance the Defendant-Appellant Base Offense Level to 36. Therefore, Defendant-Appellant was wrongly and illegally enhanced and held responsible, after the conversion, for "**Cocaine Base and/or Crack Cocaine"** for the equivalent of **"2874 Kilograms"** of Marijuana, even when Defendant-Appellant was not convicted by jury of such a charge, nor did Defendant-Appellant admit to such a charge in open court or else where, nor was it ever proven by a perponderance of the evidence, or by reasonable doubt, but yet it was still used to enhance the Defendant-Appellant, while violating his Constitutional Rights. **"was this another harmless error as the government will call it or was it just an act of malicious prosecution. This is now error number 6.**

33. A Superseding Indictment may be filed at any time before trial[11] and may be sought when a motion to dismiss the existing indictment is pending.[12] A federal grand jury may return a second indictment for the same offense when the first indictment has been dismissed or otherwise found defective.[13]

34. An order dismissing one count of an indictment is not an adjudication of fact that precludes the filing of a superseding indictment.[15] A re-indictment may be presented to the same Grand Jury that issued the original indictment. A Grand Jury is not biased by having already heard the evidence.[16] A new count in a superseding indictment referring to conduct occurring prior to the first indictment is permissible upon a second trial of the defendant after the declaration of a mistrial upon the charges originally made if the prior conduct was unknown to the prosecutor or unproven by competent evidence prior to the Defendant-Appellant's arrest or original indictment.[17]

35. That when the superseding indictment was filed against this Defendant-Appellant, there was no dismissal pending on the first and original indictment, there was no motion pending to dismiss the existing indictment either. That by the prosecutor introducing a superseding indictment with out having the first indictment dismissed he has violated my Constitutional Rights and introduced an illegal indictment.

36. That when the prosecutor introduced his evidence to the first Grand Jury he had all the information in front of him, because all the drugs were found on the day of the arrest, the prosecutor could of introduce all the evidence at once, but he waited to introduce the rest of the evidence at a later date, their was no mistrial, in this case, the rules of filing a superseding indictment states that a superseding indictment referring to conduct is permissible upon a

---

11 United States V. Wilks (Ca 10 Kan.) 629 F.2d 669,
12 People V. Cade 74 N.Y. 2d 410, 548 N.Y.S. 2d 137, 547 NE.2d 339, 1989 N.Y. Lexis 3125.
13 Buie V. United States (Ca 5 Tex.) 76 F.2d 848, Cert. Den. 296 U.S. 585, 80 L.Ed 414, 56 S.Ct. 97, reh den. 296 U.S. 662, 80 L.Ed 471, 56 S.Ct. 166; United States V. Senak (Ca 7 Ind.) 477 F.2d 304, Cert. Den. 414 U.S. 856, 38 L.Ed 2d 105, 94 S.Ct. 157, Appeal After Remand. (Ca 7 Ind.) 577 F.2d 129, Cert. Den. 425 U.S. 907, 47 L.Ed 2d 758, 96 S.Ct. 1500.

14 **United States V Bowles (Dc Me) 183 F. Supp. 237**
15 **United States V. Root (Ca 9 Cal) 366 F.2d 377, Cert. Den. 386 U.S. 912 17 L.Ed 2d 784, 87 S.Ct. 861.**
16 **Pitts V. State 259 Ga 745, 386 SE2d 351, 1989 Ga Lexis 535, Cert. Den. 498 U.S. 881, 112 L.Ed2d 177, 1990 U.S. Lexis 4980, 111 S.Ct. 217, 59 U.S. L.W. 3250, reh den., 498 U.S. 994, 112 L.Ed 552, 1990 U.S. Lexis 6007, 111 S. Ct. 543, 59 U.S. L.W. 3392 and Habeas Corpus; Granted 263 Ga. 529, 436 S.E.2d 4, 1993, Ga. Lexis 708, 93 Fulton County D.R. 3807, Corrected (Ga) 93 Fulton County D.R. 4133, Sheriff, Clark County V. Walsh 107 Nev 842, 822 P2d 109, 1991 Nev. 213, 791 P.2d 55, 1990 Nev. Lexis 41.**
17 **United States v. Preciado-Gomez (Ca 9 Cal) 529 F.2d 935, Cert. Den. 425 U.S. 953, 48 L.Ed2d 197, 96 S.Ct. 1730.**

---

Recommendations: A prosecutor who wishes to present additional evidence to a Grand Jury after an indictment has been returned may ask the grand jury to vacate the original indictment in order to consider the additional evidence. The vacator in such a case is not a dismissal. Alternatively, the prosecutor may obtain a superseding indictment by filing the original indictment and then representing the matter to the same or another grand jury.[12]

Caution: Although there is no limitation upon the right of the government to present and have pending two indictments concerning the same transaction against the same defendant or defendants, the government is not permitted to proceed to trail upon both.[14,18]

---

18 **American Jurisprudence 2d 41 §35 page 671 Indictments and Information; When indictments may be Superseded.**

---

37. Here in this case at hand the Government's case depended on the testimony of the DEA Informant Debra Nogueira and also in the testimony of Agent kelleher, Debra Noguèira was a crack user, and she was also a heroin user, she was on methodone at the time that she testified at my trial, not only was she still using at the time she took the stand, but on the day she claims that she brought two bags of heroin she waited until the next day to turn in the heroin

to Agent Kathleen Kelleher, she also testified that Defendant-Appellant Oscar Caba and Mr. Vargas offered to sell her "Blow", but she failed to note this in her report to Agent Kelleher, yet she also claims that Defendant-Appellant Oscar Caba, was not know to her or around the community as a cocaine or crack dealer, and she goes further by stating that she had never seen me sell any cocaine or crack. Yet the Court used an aquitted charge "Crack Cocaine" Count Six against Defendant-Appellant as relevant conduct in order to enhance Defendant-Appellant's sentence, and upon a denial on Direct Appeal it was determine that there was enough evidence shown to prove beyond a reasonable doubt that there was relevant conduct with the Crack Cocaine and that it could be used against Defendant-Appellant. That the Court errored when it determined this case, because crack cocaine was never mentioned with my name attached to it, the only investigation that the Agents claim they had or were conducting against Defendant-Appellant and Mr. Manolo Vargas was into heroin, upon their arrest of Mr. Vargas, that was when cocaine and crack cocaine became part of this case, The other agents stated that they did not recognized me as being one of the guys outside of 95 Ring Street, they did not recognize me as being there on the night that Agent Kelleher claims that Defendant-Appellant and Mr. Vargas sold her the drugs, they did not even agree with her account on seeing me there three nights prior to the arrest date. What was this,was it just a simple mistake by agent Kelleher, or was she just making a false statement to the Grand Jury, it is hard to believe that such an expert as she claims herself to be on drug cases for the reasons that she has worked numerous of drug cases, any way its hard to believe that she would make so many mistakes in her course of this investigation, unless she committed such offense maliciously against this Defendant-Appellant on the grounds of obtaining a conviction. I believe she committed all the aforemention in a malicious way, and that the prosecutor acted in the

same way while committing malicious prosecution against this Defendant-Appellant, they knew that the informant Debra Nogueira was lying, the prosecution must of seen that Agent Kelleher's statement in front of the Grand Jury were contracting each other, so he should had looked into this before he continued with his prosecution of the case. The Court also made false statement on the record when the Court states on the Appeal denial that Defendant-Appellant was linked by finger print to the cocaine and/or crack cocaine, the prosecutor also made this same statement, but in reality my finger prints were never obtain in any bag that contained any drugs if you read and look through the transcripts involving the Grand Jury in order to indict Defendant-Appellant then you will see that my finger prints were obtain in the back of a color paper pad, then upon the superseding indictment agent Kelleher claims that my finger prints were obtained in the shopping bag where some of the drug was found, but prior to that statement she claimed that the only drugs found were in the bathroom and in the back of the console T.V. in the bed room of Mr. Vargas. There were so many mistakes made in this investigation that it is very plain to see that the prosecutor and Agent Kelleher had it out for me, there only witness a Heroin Junkie, Crack Smoking, cocaine user, who would lie on her own mother just to get another fix, a prostitute, who worked for the government for this case, just so that she could make a few easy dollars so that on her way home from the court, she could just go out and waste it on another bag of heroin. Their star witness who also admitted in open court that she was a liar. How could the Court, or my defense counsel and even the attorney that was appointed to look into doing an appeal for Defendant-Appellant miss all this information, any person could see throught all this malicious prosecution with lies, false statements being used. With out Agent Kelleher's and Debra Nogueira testimony there would had been no indictment and no evidence to carry the case to the jury.

38. Agent Kellehe s and Debra Nogueira credi lity as witnesses were therefore an important issue in this case at hand, and as such contradictions should had been made know and Debra being on Methodone at the time that she testified should had been made known to the Jury, her drug use should had been made known to the Jury, her holding on to the drug (heroin) and turning it over to the agent the next day should had been made known to the Jury, for these reasons, the due process requirements enunciated in Napue and other cases named and cited within this petition require a new trial, and the judgement of conviction that was issued should be reversed or in the interest of justice the sentence that was issued using prior States Offenses in order to enhance Defendant-Appellant and while also using an aquitted charge of crack cocaine in order to enhance this Defendant-Appellant by using relevant conduct on the crack cocaine when it was neither admitted to by this Defendant-Appellant in open court or any where for that matter, or proven beyond a reasonable doubt to a jury, should be vacated and Defendant-Appellant should be re-sentence with out all the above-mentioned enhancement.

39. That deliberate deception of a court and jurors in a criminal case by the presentation of known false evidence is incompatible with the rudimentary demands of Justice, upon the due process clause, the prosecution's suppression of material evidence justifies a new trial irrespective of the prosecution's good faith or bad faith. A conviction secured by the use of false evidence must fall under the due process clause where the prosecutor, although not soliciting the false evidence, allows it to go uncorrected when it appears.[19]

---

**19 Giglio Vs. United States 405 U.S. 150, 31 L.Ed 2d 104, 92 S.Ct. 763 (2/24/72).**

---

40. That previou y undisclosed evidence rev ls that the prosecution introduced trial testimony that prosecutor knew or should have known that it was perjured; There are three components of a "Brady" violation The evidence at issue must be favorable to the accused, either because it is exculpatory or impeaching; that evidence must have been suppressed by the prosecutor, either willfully or inadvertently; and prejudice must have ensued.[20]

41. A criminal conviction obtained through the prosecution's knowing use of perjured testimony violates a defendants right to due process. A Lie is a Lie, no matter what its subject, and, if it is in any way relevant to the case, the prosecutor has the responsibility and duty to correct what he knows to be false and elicit the truth.[21]

42. A conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.[21]

43. It is well established that a conviction obtained through the use of false evidence, known to be such by representatives of the prosecution team, must fall under the Fourteenth Amendment. The same result obtains when the prosecution, although not soliciting false evidence, allows it to go uncorrected when it does appears.[22]

44. Defendant-Appellant argues that to allow this conviction to stand and sentence to remain as such, based on the testimony of not one, but

---

20 **Turner Vs. Schriver 327 F. Supp. 2d 474 (E.D. N.Y. 7/21/04)**

21 **Hayes Vs. Woodford 301 F.3d 1054 (9th Cir. 2002)**
**Napue Vs. Ill. 360 U.S. 264, 269, 79 S.Ct. 1173, 3 L.Ed 2d 1217 (1959)**
**N. Mariana islands Vs. Bowie 243 F.3d 1109, 1115 (9th Cir. 2001)**
**Killian Vs. Poole 282 F.3d 1204, 1208 (9th Cir. 2002)**
**United States Vs. Agurs 427 U.S. 97, 103, 96 S.Ct. 2392 (1976)**

22 Hall Vs. Director of Corrections 343 F.3d 976 (9th Cir. 2003).

two witnesses Agent Kelleher and the informant Debra Nogueira, one who admits to lie, is a prostitute, Heroin Junkie, Crack smoking, Cocaine user who would lie on her own mother for a quick fix, and the other one who can not get her prior testimony straight in front of the Grand Jury on not oone but two prior occasions, when her prior testimony contradict each other, which goes to show and prove that the evidence was falsified, and it is a violation of my right to due process under the Fourteenth Amendment; Please see United States Vs. Agurs 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed 2d 342 (1976); Alcorta Vs. Texas 355 U.S. 28, 31, 78 S.Ct. 103, 2 L.Ed 2d 9 (1957).[23]

45. Not only did my Defense counsel allow all this to happen without objecting or investigating such testimony, but my court appointed attorney Brian M. Glover, never conducted any investigations into my case in order to determine whether it was appealable, but instead he just decided to not follow up on leads that I had asked him to look into, and he then claimed that there were no good faith appealable issues. This made not one, but, both my attorney's ineffective assistance of counsel.[24]

23 Brady Vs. Maryland 87 U.S. 83, 83 S.Ct. 1194 10 L.Ed 2d 215 (1963), The Supreme Court reaffirmed its prior holdings that suppression of evidence favorable to the defense is a denial of Due Process, and a denial of Due Process occurs where the Government allows false evidence to go uncorrected; In addition, the Court held that suppression of "Material" evidence by prosecutor results in a Due Process violation, regardless of whether there is good faith on the part of the Prosecution A New Trial is required if "The false Testimony could., In any likelihood have effected the judgment of the jury".

24 Strickland vs. Washington 466 U.S. 668, 80 L.Ed 2d 674, 104 S.Ct. 2052 [No. 82-1554] (Argued January 10, 1984, decided May 14, 1984)

46. That Defense Counsel's and Court Appointed Attorney for handling of appeal purportedly deficient performance prejudiced Defendant-Appellant Oscar Caba, and this Court should had evaluated the effectiveness of both Counsel's in the context of trial over all performance throughout the trial and their investigations into a direct appeal process, especially since this defendant-Appellant Oscar Caba objected to having defense attorney represent him because of a conflict between Defendant-Appellant and the Attorney.[25]

47. That I was forced to continue with my Defense Counsel by the Court, at which time the court stated you will continue with this attorney or you continue alone at trial, this to,was a violation of my rights to have effective assistance of counsel.[25]

---

23 **United States Vs. Hale 422 U.S. 171, 45 L.ed 2d 99, 95 S.Ct. 2133; Witnesses §99 - IMPEACHMENT OOF WITNESS - PRIOR INCONSISTENT STATEMENT:** Prior inconsistent statements may be used to impeach the credibility of a witness; as a preliminary matter, however, the Court must be persuaded that the statements are indeed inconsistent.

**United Vs. Abel 469 U.S. 45, 83 L.Ed 2d 450, 105 S.Ct. 465 Witness § 95 IMPEACHMENT FOR BIAS - DEFINITION:** Bias is a term used in the **"Common law of evidence"** to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor or against a party, and bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self - interest; Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

**Cole Vs. Richardson 405 U.S. 676, 31 L.Ed 2d 593, 92 S.Ct. 1332;** It is punishable only by a prosecution for perjury and, since perjury is a knowing and willful falsehood, the Constitutional vice of punishment without fair warning can not occur in this case. Neither can it occur at the case at hand.

**United States Vs. Cuffie [No. 92-3263 - 95-3128] 80 F.3d 314, (Court of Appeals; D.C. April 5, 1996)** Cross examination of witness that revealed evidence casting serious doubt upon witness's truthfulness as a witness in a judicial proceeding could have change the nature of the trial. **See also Smith 77 F.3d at 516.**

24 **Zahrey Vs. Coffey 221 F.3d 342, United States Court of Appeals [Docket No. 99-9119] (2nd Cir. 2000)** The Court held that, (1) Right not to be deprived of liberty as a result of fabrication of evidence by a government officer acting in an investigating capacity is a constitutional right, for purposes of precluding qualified immunity, provided that the deprivation of liberty of which plaintiff

complains can be shown to be the results of defendant officer's fabrication of evidence.

**CIVIL RIGHTS (Key) 214(2)** Qualified immunity protects a public official from liability for conduct that does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

25 **Kimmelman Vs. Morrison 477 U.S. 365, 386, 106 S.Ct. 2574, 91 L.Ed 2d 305 (1986); Alvarez Vs. Keane 92 F. Supp. 2d 137 (E.D N.Y. 2000); Strickland 466 U.S. at 690, 104 S.Ct. 2052; Michael Vs. louisiana 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed 83 (1955); Tippins Vs. Walker 77 F.3d 682 (2nd Cir. 1996)**

**Cargle Vs. Mullin 317 F.3d 1196 (10th Cir. 2003)** As explained in detail, petitioner has established many instances of constitutionally deficient performance by counsel, prosecutorial misconduct, and the admission of improper victim impact evidence at trial. In addition to claiming that each of these distinct categories of error gave rise to sufficient prejudice, in itself, to warrant relief.

**Glover Vs. United States 531 U.S. 198, 148 L.Ed 2d 604, 121 S.Ct. 696 (2001)** It was incorrect to rely on Lockhart to deny relief to persons attacking their sentence who might show deficient performance in counsel's failure to object to an error of law affecting the calculation of a sentence because the sentence increase does not meet some baseline standard of prejudice. Authority does not suggest that a minimal amount of additional time in prison cannot constitute prejudice. Quite to the contrary, our Jurisprudence suggests that any amount of actual jail time has a Sixth Amendment significance.

---

48. This Defendant-Appellant is entitled to be properly assisted by a competent attorney or attorneys, whether retained, or appointed, who plays the role necessary to ensure that the trial is fair, In other words, the right to counsel is the right to effective assistance of counsel.[26]

49. Because Collateral review will frequently be the only means through which a Defendant can effectuate the right to counsel, restricting the litigation of some Sixth Amendment claims to trial and direct review would seriously interfere with a defendant's right to effective representation.[26]

50. That I am a layman and untrian in the matters of the law, and as such will ordinarily be unable to recognize counsel's errors and to evaluate counsel's professional performance, consequently a criminal defendant will rarely know that he has not been represented competently

until after trial appeal, usually when he consults another lawyer about his case. Indeed, an accused will often not realize that he has a meritorious ineffectiveness claim until he begins collateral review proceedings, particularly if he retains trial counsel himself or he starts to do his own investigation into the law or his case for a defense on direct appeal. Were the Court to extend Stone and hold that criminal defendants may not raise ineffective assistance claims that are based primarily on incompetent handling of Fourth Amendment issues on Federal Habeas, this would deny most defendants whose trial or direct appeal attorneys performed incompetently in this regard the opportunity to vindicate their right to effective trial counsel.[27]

51. That "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different". There is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt.[28]

52. That Defendant-Appellant has established the rule of presumed ineffectiveness of counsel in certain situations regarding all the errors that were made during trial and in the situation of the Court appointed Attorney to handle the direct appeal, who did not even do a proper investigation into the facts concerning the appeal, before concluding that their were no issues for appeal. Without Pre-Trial consultation or conversations with Defendant-Appellant regarding a case strategy into how the case or investigation would be handle or to

---

**26 Evitts Vs. Lucey 469 U.S. 387, 395-396, 83 L.Ed 2d 821, 105 S.Ctt. 830 (1985)**

**27 Powell Vs. Alabama supra at 69, 77 L.Ed 158, 53 S.Ct. 55, 84 ALR 527.**

**28 Kimmelman Vs. Morrison 477 U.S. 3651, 91 L.Ed 2d 305, 106 S.Ct. 2574.**

just plainly discuss the pending case and/or direct appeal with the Defendant-Appellant. Defense Counsel or Court appointed Counsel for Direct Appeal cannot and did not fulfill their duty to properly investigate and/or offer any professional performance in the initial trial or direct appeal concerning this case at hand.[29]

53. That when Defendant-Appellant asked in open Court to have trial counsel removed from representing him (Defendant) Oscar Caba, because of personal conflicts between Defendant-Appellant and Counsel, but, however, the Court forced this Defendant-Appellant Oscar Caba to proceed to trial with his then Defense Counsel, who was un-prepaired or face trial without any Counsel on my own, my rights were then violated under the United States Constitution Amendment 6, by the Honorable Court, Defense Counsel, and the Prosecution team, by no one objecting and allowing the malicious prosecution to continue.[29]

54. That for the reasons stated up above in this case, the case should be **"<u>REVERSED</u> and/or <u>REMANDED</u>"** or at best in the interest of justice Defendant-Appellant should at least be remanded back to the Court for re-sentencing of an illegal sentencing and illegal enhancements that were made while Defendant-Appellant was being represented by an incompetent un-pre-paried Attorney.[29]

---

29 **Hunt Vs. Mitchell 261 F.3d 575 [No. 99-4308], United States Court of Appeals Sixth Circuit Argued June 13, 2001, Decided and Filed August 22, 2001.**

**<u>HABEAS CORPUS (key) 842</u>:** Whether defendant was deprived of his right to effective assistance of Counsel is a mixed question of law and fact for habeas court, that the Court of Appeals review de novo. **U.S.C.A. Const. Amend. 6.**

**<u>CRIMINAL LAW (key) 1035</u>:** By definition, a per se violation of a defendant's right to effective assistance of Counsel does not require the defendant to preserve the error below. **U.S.C.A. Const. Amend. 6.**

29 **CRIMINAL LAW (key) 641.12.(1):** Where Counsel has/or Had no acquaintance with the facts of the case and no opportunity to plan a defense or to investigate in order to plan a defense, the result is that the defendant is effectively denied his Constitutional Right to effective assistance of Counsel. **U.S.C.A. Const. Amend. 6.**

---

55. That when this Honorable Court used cash that was found at my girlfriend's house to enhance my sentence, even when she testified that the cash was not mine, but, in fact that it belong to her, but this Honorable Court still took it upon themselves to convert the cash into crack cocaine and then into Marijuana in order to enhance this Defendant-Appellant. The cash was first converted into crack cocaine, a drug which defendant-Appellant was aquitted of, but this Honorable Court still took it upon themselves to use it to enhance Defendant-Appellant with out any admitsion to this drug or with out it being proved beyond a reasonable doubt to a jury.

56. That evidence taht a sum of cash found on a defendant simply because it equals the value of drugs found, but none of which was ever found on this Defendant-Appellant is not enough, even if in conjunction the defendant can not account for this sum of cash, which in this case at hand was not an issue, because the cash was accounted for, but even if the defendant has or had a drug conviction history of arrests prior to the one in question, to allow a court to treat the cash as a proxy for an additional quantity of crack cocaine or any type of drug in order to determine an extra or extra points in order to enhance such a sentence over what the United States Sentencing Guidelines recommend is not allowed.[30]

---

30 **United States Vs. Sandridge 6th Cir. [No. 03-6046] September 30, 2004; The United States Court of Appeals for the Sixth Circuit held that in the case at hand the government failed to meet its burden of proving by a preponderance of the evidence that the cash found was tied to the purchase or sale of drugs.**

**SUPREME COURT'S RULING IN APPRENDI Vs. NEW JERSEY**
**530 U.S. 466, 147 L.Ed 2d 435, 120 S.Ct. 2348**
**[No. 99-478] (June 26, 2000)**
**RING Vs. ARIZONA**
**536 U.S., 153 L.Ed 2d 556**
**BLAKELY Vs. WASHINGTON**
**159 L.Ed 2d 403, 124 S.Ct. 2531 June, 2004**
**AND THE NOW EVOLVING**
**UNITED STATES Vs. BOOKER AND FANFAN**
**IN THE UNITED STATES SUPREME COURT**
**WASHINGTON , D.C.**
**Argued on Monday, October 04, 2004,**
**BRINGS NEW LIGHT TO DEFENDANT-APPELLANT'S**
**PREVIOUSLY RAISED ISSUES ON DIRECT APPEAL AND NOW**
**PURSUANT TO TITLE 28 U.S.C.§ 2255**

A Federal Judge in Utah cited the ruling in declaring a federal sentencing guidelines unconstitutional in a child sexual exploitation case. In Washington D.C., the tobacco farmer who created chaos by crashing his tractor into a pond on the National Mall was release from jail after a judge reduced his sentence in the wake of the high court's ruling. Around the Country, judges have postponed sentencing or reduced sentences already handed down. U.S. District Court Judge Thomas Penfield Jackson reduced the sentence of Dwight Ware Watson from six years to just 16 months for his National Mall standoff with police in a protest over federal agriculture policy.

The Government wants clarification of the June 24, ruling that appears to give defendants a right to demand that every fact that could lengthen a sentence be put to a jury and proven beyond a reasonable doubt. Under procedures now common in federal and state courthouses, judges make many routine factual determinations, such as the quantity of drugs seized in a raid, whether a gun was used in the crime and how much money is at issue in a fraud case.

In the Blakely Vs. Washington decision, the court erased the sentence of a wealthy Washington state rancher who kidnapped his estranged wife at knifepoint in 1998. Ralph Howard Blakely II pleaded guilty in a deal with prosecutors and expected a sentence of about four years as set in state sentencing guidelines. A judge added three years to Blakely's prison term after finding that Blakely showed "deliberate cruelty." Justice Antonin Scalia wrote the opinion and said in a footnote that federal sentencing guidelines were not at issue in the case. But dissenters said the ruling still would undermine if not destroy the 17 - year - old federal system, which was meant to make sentencing fairer by reducing disparities among punishments handed out by different judges. Blakely, having plead guilty to second degree kidnapping, a Class B felony under Washington Law that carried a ten - year statutory maximum sentence. Id. at 2 (citing Wash. Rev. Code Ann. §§ 9A.40.030(3), 9A.20.021(1)(b)). Washington's Sentencing Reform Act, however, specified a "standard range" of 49 to 53 months for Blakely's offense of second-degree kidnapping with a firearm. Id. (citations omitted). At sentencing, the court rejected this standard range and imposed an "exceptional sentence" of 90 months' imprisonment on the grounds that Blakely had acted with "deliberate cruelty," a statutorily enumerated ground for departure in domestic violence cases. Id. at 3 (citing Wash. Rev. Code Ann. § 9.94A.390(2)(h)(iii)). Blakely objected to the trial court's sentencing procedure, and, in response, the court held a three-day bench hearing featuring testimony from numerous witnesses. After the hearing, the court issued 32 findings of facts, ultimately reaffirming its original decision to impose the 90 month enhanced sentence. On appeal, Blakely argued that the sentencing procedure deprived him of his right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence. The state Appellate courts rejected Blakely's argument and affirmed. On certiorari review,

the United States Supreme Court reversed in a 5-4 decision, holding that Blakely's enhanced sentence violated Apprendi. Notably, the Court rejected the States's argument that Blakely's case was distinguishable, because his 90-month sentence did not exceed the 10-year statutory maximum for Class B felonies, explaining that our precedents make clear, that the "statutory maximum" is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted to by the defendant, in other words, the relevant "statutory Maximum" is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts, "which the law makes essential to the punishment," And the judge exceeds his proper authority.

The court determined that the rule, though it is not retroactive, was retroactively applicable on collateral review, because it was a substantive change in the law. Therefore, since defendant-Appellant has filed this motion raising Apprendi, Ring, Blakely, and now Booker, and FanFan issues, but also the fact that I was forced by the Court to continue with trial with or without counsel after raising the issue that i wanted defense counsel removed and new counsel appointed, this petition is timely filed under the statute of limitations contained in Title 28 U.S.C. § 2255 (3). Blakely is the same situation, though not retroactive, it is a substantive change in the law and so is Booker and FanFan providing that the sentencing guidelines are unconstitutional, not unlike the act of avoiding the requirement that every element of a charged offense be proven beyond a reasonable doubt, thus making it retroactively applicable on collateral review.

The Facts of this case are plain, Defendant-Appellant previously litigated upon a direct appeal, litigating sentencing issues which were denied on their merits. Accordingly, the Supreme Court has held and stated that "even if the same grounds were rejected on the metrits of a prior application, it is open to the applicant to show that the ends of justice would be served by permitting the redetermination of the ground. If factual issues are involved, the applicant is entitled to a new hearing upon showing that the evidentiary hearing on the prior application or appeal was not full and fair." If purely legal questions are involved, the applicant may be entitled to a new hearing upon showing an argument in the prior application or appeal. Two further points should be noted. First, the foregoing enumeration is not entended to be exhautive; the test is "the ends of justice" and it cannot be too finely particularized. Second, this Defendant-Appellant has shown that, although there has not been a prior application of §2255, their has been a direct appeal filed which was denied, and that the grounds on this application for relief pursuant to title 21 §2255 were some of the same grounds upon the direct appeal, but there are more issues that are covered under the §2255. That the direct appeal that was filed was done in a poor fashion and by ineffective assistance of counsel, and the ends of justice would be served if a redetermination of the grounds would be reconsidered, also when the direct appeal was filed the Booker and FanFan issues were not argued at that point in time and because of the above-mentioned cases they have opened new doors for the Court to take a look and redetermine these issues. That the governing Guidelines for a violation of Title 21 U.S.C. §841(a)(1) and §846 is §2D1.1 and that the subsections that were used were the wrong one for the case at hand, the government used subsection 2D1.1(C)(4) for a base ofense level of 32, which was conculated as follows; The 35.4 grams of Heroin were equated to 35.4 Kilograms of

Marijuana (1 gram of Heroin = 1 kilogram of Marijuana); The 934 grams of Cocaine was converted to 18.68 Kilograms of Marijuana (1 gram of Cocaine = 200 grams of Marijuana-934 x 200 = 18680÷1000). The 143.7 grams of Cocaine Base was converted to 2874 Kilograms of Marijuana (1 gram of Cocaine base = 20 Kilograms of Marijuana-143.7 x 20); even when this Defendant-Appellant was aquitted of the Cocaine Base charge it was still used as relevant conduct in order to enhance Defendant-Appellant, but in fact no relevant conduct was proven beyond a reasonable doubt or was it admitted to by this Defendant-Appellant in open court or any where for that matter. This Defendant-Appellant was never being investigated for any Cocaine Base, the Agent's never made any buy of cocaine or Cocaine Base (Crack) at any time from this Defendant-Appellant or any one else for that matter that was being investigated. The confidential informant that was used even gave testimony that Defendant-Appellant was not know to be involve with any Cocaine Base and/or Crack, the Agents that were watching the house could not even recognize this Defendant-Appellant as any of the persons they saw coming in and out of the house at 95 Ring Street. The Government even converted the money that was found into Cocaine in order to enhance Defendant-Appellant, but the money was account for and there was testimony as to where it came from, but yet it was still used in an illegal way in order to enhance this Defendant-Appellant. The agents seized $4,350 dollars and converted it to the equal value of Cocaine which converted to $4,350 corresponds to 102.77 grams of Cocaine or 20.55 Kilograms of Marijuana ($4,350 ÷ $1,200 per ounce = 3.63 oz. x 28.35 = 102.77 grmas of Cocaine x 200 = 20553.75 ÷ 1000) for a total of 2,948.63 Kilograms of Marijuana for a Total Base Offense Level of 32, but take out the crack cocaine and the money and it only totals to 74.63 Kilograms of Marijuana or at the worst 934 grams of Cocaine which

brings the base offense level back to 26 points and if I am left at Category III then I should be at 78 to 97 months, but to my knowledge I should be at Category II, for the reasons that I only have two priors, and the enhancment that was given to me based on a probation violation was not proven to any jury or admitted to by this Defandant-Appellant, nor in open court or any where for that matter. If I am sentence under the proper guideline offense level of 26 category of II then I should at 70 to 87 months which should give me about time served upon a re-sentencing with a 4 year term of supervise release imposed, not the 8 years that were imposed after this Defendant-Appellant was enhanced for his prior conviction, which is illegal based on the Booker and Fanfan, decision that was handed down on Todays date of January 12, 2005.

The means for conducting jury fact-finding are moreover well established, - so much so that, on directions from the department of justice following Blakely, federal prosecutors have been alleging enhancing facts in indictments and proving them to juries at sentencing. And ever since Apprrendi, the government has regularly pleaded drug quantity and type in indictments and secured special jury findings on those questions. The government has never explained how it claimed that jury fact-finding is impracticable can be reconciled with this actual experience. Indeed, several lower courts have already called for juries to be convened if prosecutors insist on seeking enhanced sentences based on facts that were neither admitted by the defendant nor found by a jury.[30]

---

**30 See, e.g., United States Vs. Ameline, 376 F.3d 967, 983 (CA 9th 2004); United States Vs. Booker 375 F3d 508, 514 (CA 7th 2004) Also see United States Vs. Khan 325 F. Supp. 2d 218, 231-232 (E.D.N.Y. July 20, 2004)**

There is no novelty in a separate jury trial with regards to the sentence.[32] Such bifurcated jury trials are already a mandatory part of capital prosecutions.[32] And are commonly used to adjudicate criminal forfeiture allegations,[33] Federal Civil trials typically involve (and, under the seventh Amendment, arguably require) a jury to determine liability and damages in separate proceedings.

The Seventh Amendment's right to a jury trial includes the right to have a jury determine the amount of statutory damages, if any, indeed, the only anomaly in the federal system today is the absence of jury fact-finding for a criminal sentencing.

The Six Amendment protects against encroachments on the right to jury trial by any branch of government. The governments singular focus on what it views as the judicial character of the guidelines completely misses the mark. The right of an accused to trial by jury is protected in our Constitution twice, in Article III, §2, cl.3, and in the Sixth Amendment. The placement of this core Constitutional right in the Bill of Rights, rather than in Article I, shows that it makes no difference whether the guidelines are **"Legislative"** or **"Judicial"** in character. The discussion of jury trials in Article III demonstrates that the judicial branch, in particular, is charged with protecting that right.

As Defendant-Appellant discusses at length, the guidelines provenance is simply irrelevant to the question whether their application violates or violated Defendant-Appellant's Sixth Amendment Rights. A criminal defendant has a right to insist that the prosecutor prove to a jury all facts legally essential to the punishment or any fact that would increase or enhance the punishement.[34]

When the essential facts are not submitted to the jury, but are instead determined by a judge be a mere preponderance of the evidence, this right is violated, no matter who created the rules authorizing or directing the judge to do so. Thus, if the judicial conference were to adopt, and this court were to promulgate, a rule of criminal procedure authorizing a federal judge to find facts that could raise a Statutory Maximum, that rule would violate Blakely no less than a Statute adopted by Congress to the same effect.[35] Re-sentencing defendant-Appellant, as the government might argue or strongly suggest,[36] would furthermore violate the double jeopardy clause. The government omitted from its indictment of Defendant-Appellant the fact that, under the Apprendi line of cases, were required to be alleged because they trigger the enhancements of Defendant-Appellant's sentence by more than 196 months which equals 16 years and two months, over the required sentence of 97 months 8 years and 1 month which is what the sentence should had been if the proper offense level of 26 would had been used. These facts were, at the least, "The functional equiralents of elements of a greater offense than the one covered by the jury's guilty verdict.[37] To now re-indict Defendant-Appellant would thus be to prosecute unconstitutionally for greater offenses than the ones for which I have already been convicted.[38] As there is no principle reason to distinguish between what constitutes an offense for purposes of the Sixth Amendment's jury trial guarantee and what constitutes an offense for purposes of the Fifth Amendment's double jeopardy clause.[39]

---

32 **Ring Vs. Arizona 536 U.S. 584 (2002).**

33 **Fed. R. Crim. P. 32.2(b)(4).**

34 **Blakely Vs. Washington 124 S.Ct. at 2543.**

35 **CF. Fed. R. Crim. P. 32(i)(3).**

36 **U.S. Br 53.**

37 **Apprendi Vs. New Jersey 530 U.S. at 494 N. 19.**

38 **Blockburger Vs. U.S. 284 U.S. 299, 304 (1932);**
38 **Brown Vs. Ohio 432 U.S. 161 (1977).**

39 **Santtazahn Vs. Pennsylvania 537 U.S. 101, 111-12 (2003)**

---

By retaining the current systems use of unfair and unreliable fact finding procedures despite their deleterious effects on the Defendant-Appellant's constitutionally protected interest, while at the same time eliminating the restraints on judicial discretion imposed by the guidelines scheme, the government's proposal would exacerbate those constitutional concerns immeasurably. The most repugnant of the department's tactics is to lie to the court in order to induce a guilty plea. This is the process known as fact barganing. [40]

Congress's concern with the rule of judges in sentencing was clear both to the S.R.A.'s supporters and opponents.[41] By transforming a judicial fact-finding from a vice that Congress sought to limit into a value that it sought to preserve, the government thus turns both logic and history on their heads. Apparently, jurors are necessary and trustworthy only at the two ends of the importance continuum in civil cases where only money is at stake and in capitol cases where a life is at stake. They are some how unnecessary or untrustworthy in the vast middle, where only judges are trusted to impose prison sentences that can run from one day to a life time.

---

40 **Tony Garöppolo, Fact Bargaining: What the sentencing commission has wrought, 10 Crim. Prac. Man. (BNA) 405, 405 (Oct. 9, 1996) (Terming Fact Bargaining "The dirty little secret in the prosecution of Federal Criminal Cases).**

41 **Compare 130 Cong. Rec. 976 (1984) (statement of Sen. Laxalt) "The present problem with disparity in sentencing, stems precisely from the failure of Federal Judges, individually and collectively to sentencing similarly situated defendants in a consistent, reasonable manner. There is little reason to believe that Judges will now begin to do what they have failed to do in the past." (Statement of Sen. Mathias) "The proponents of the bill argue in essence that Judges cannot be trusted; you cannot trust a Judge; You must not trust a Judge."**

Rather than defend their own position, the government will employ their efforts on attacking the use of juries to determine facts under the guidelines as inconsistent with congressional intent and thus they will militate against severability. The government will also argue principally that congress, and also the Sentencing Commission anticipated that the guidelines generally would be applied based on Fact-Finding by the sentencing court, not a jury.[42]

This is not, however, an argument against severability; it is instead a recitation of the characteristic of the guidelines that violates the Sixth Amendment. Judicial Fact-Finding is not so inextricably intertwined with the essential elements of federal sentencing that the guidelines cannot function without it. The government does correctly note "that congress was responding to perceived problems with the sentences imposed by judges, not juries, and so the senate report made clear that the projected guidelines are designed to structure judicial sentencing discretion.[43] In Apprendi it was held "that other than a fact of a prior conviction, any fact that were to increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proven beyond a reasonable doubt, but in this case at hand no such procedures were held this defendant-Appellant even while being aquitted of a crack cocaine charge was still enhanced by the Judge, while their were no such proof of such behavior, In Ring it was reaffirmed that the characterization of critical facts is constitutionally irrelevant. In Blakely the court dealt with a determinate sentencing scheme that was very similar to the Federal Sentencing Guidelines.

---

42 U.S. Br. 46-49.

43 U.S. Br. 48.

For reasons explained in Jones, Apprendi, Ring, Blakely, and now with the decision reached on January 12, 2005, in Booker and Fanfan the requirements of the Sixth and Fifth Amendments are clear. The application of the Washington Sentencing scheme and now also the application of the Federal Sentencing Guidelines violated this Defendant-Appellant right to have a jury fine the existence of "any particular fact" that the law makes essential to Defendant's punishment. This right is implicated whenever a judge seeks to impose a sentence that is not solely based on "Facts reflected in the jury verdict or admitted to by the Defendant." As in the case at hand when Defendant-Appellant was aquitted on the charges of crack cocaine, but still the judge took it upon himself to still use the aquitted charge of crack cocaine as relevant conduct even when their was no such evidence to support such a finding. The judge still enhanced this Defendant-Appellant to a 10 point level enhancement based solely on relevant conduct and a leadership role, which the judge choose to use, but which were never proven to a jury or admitted to by this Defendant-Appellant.

This Defendant-Appellant was sentenced on Friday, March 31, 2000, to 293 months, which is equal to 24 years and 5 months, the base offense level that was used to reach such a determination was level 36. Even if the Court were allowed to use Defendant-Appellant's prior criminal history, which according to[44], In which District Court Judge Zobel, held that enhancement of sentence due to a prior state narcotics conviction, rather than a federal narcotics conviction, was illegal. And petition was granted for re-sentencing. But, even if the Court were allowed to use Defendant-Appellant's prior state conviction and

---

**44 Richard Little Vs. United States of America [No. Civ. A. 01-40077RWZ, Decided July 1, 2002; Cited as: 2002 WL 1424581 (District of MA.).**

enhance 2 point level, which would had brought Defendant-Appellant to level 28, and if the evidence held to prove a leadership role for the additional 2 point level, that would had brought this Defendant-Appellant to a base offense level of 30, with a category of II, but the government brought this Defendant-Appellant to a category of III, which guidelines point to a sentence of 121 to 151 months, if this Court would had chosen the highest scale of the guidelines of 151 months there is a difference of 142 extra months, that's 11 years 10 months enhancement on an aquitted charge. If sentence under these terms Defendant-Appellant should've received a sentence of 12 years 7 months a big difference between 12 years and 7 months compared to 24 years 5 months.

Defendant-Appellant also argues that the category level that was used by this Court for sentencing which was level III, but what should've been II, if the prior convictions were allowed to be used, the caculation should be as follows - 108 to 135 months at the highest sentencing level of 135 months which equals 11 years 3 months a difference of 158 months, 13 years 2 months.

Defendant-Appellant also argues that the proper sentencing level and category should be at category I level 26 for a sentence of 63 to 78 months at the highest sentencing level of 78 months, which comes out to 6 years 6 months, a difference of 215 months, 18 years.

However, the government will try to call this type of sentence reasonable, but how can this Court call this type of sentence reasonable when they gave Defendant-Appellant almost double the time on an aquitted charge, just because two employee's of the government (The Judge & Prosecutor) thought it to be proper and reasonable.

## CONCLUSION

For 20 years, Federal Courts have been forced to impose unjust, irrational sentences based on unproven allegations, speculative calculations and the worst kind of hearsay evidence. Instead of a justified, fair, and lawful sentence the courts have been imposing a **"QUICK FIX."**

**THEREFORE,** Defendant-Appellant demands justice and that before this Court deprives this Defendant-Appellant of at least an extra 16 years of his liberty, the government should suffrage the modest inconvenience of submitting its accusation to the unanimous suffrage of twelve of my equal peers and neighbors, rather than to a lone employee of the Government **"The Judge."**

**WHEREFORE,** Defendant-Appellant demands of this Honorable Court that in light of the already decided Apprendi, Ring, Jones, and Blakely, which were re-affirmed to now apply to the Federal Sentencing Guidelines in the Booker and Fanfan case which was decided on January 12, 2005. That Defendant-Appellant remanded back to the District Court for the 1st Distrcit of Providence Rhode Island, for re-sentencing or in the interest of justice that Defandant-Appellant be sentence to time served and release and for such other relief as this Court may deem just and proper.

**Dated: January 20, 2005.**

**Respectfully submitted,**

**Oscar Caba, Pro-Se,**
**Defendant-Appellant**
**Prison Reg. No. 04697-070**
**F.M.C., Devens, P.O. Box 879**
**Ayer, MA. 01432**

# E X H I B I T "A"

apartment, and if there was anything in here he wanted to tell us about before we began the search.

Manolo Vargas said to me, "That it was in the bathroom next to the window."

Q What did you then do?

A Myself and one of the other Detectives, that was at the location, went right to the bathroom, and where the bathroom tub, shower stall and the bathroom window, there was -- there's an area, about this big, and between the bathtub wall, shower stall and the window was approximately 900 grams of heroin.

Q Did that -- was that field-tested by you at all?

A Yes, sir.

Q And did that 900 grams test positive?

A Yes, for the presence of heroin.

Q And the 900 grams is approximately what, two pounds of heroin, a little over two pounds of heroin?

A Yes, sir.

Q Would that be a quantity that would be consistent with distribution to others, as opposed to personal use?

EXHIBIT "A"

EXHIBIT "B"

A Distribution.
Q Was there any further search of the apartment, other than the bathroom area?
A Yes, sir.
Q And was anything else seized from the apartment?
A Seized from the rear bedroom, where Mr. Vargas was sleeping, there was a large old console TV, and in the rear of that TV was a zip-loc baggy that contained approximately 147 grams of crack cocaine, and another 60 -- approximately 68 grams of powder cocaine.
Also seized from the closet of that bedroom was a large white shopping bag. Inside the white shopping bag was two -- an electric grinder, a scale, two sifters, small spoon, a box of baggies, bags of rubber bands, six pads of bright colored paper, two containers of Mannite, three baggies of Mannite, one bottle of Inositol, digital scale, three tape dispensers and nine rolls of Scotch Tape.
Q What's Mannite and Inositol?
A They are common cutting agents that drug dealers use to put on the pure heroin to -- they dilute it, and it gives them more heroin prior to

EXHIBIT "B"

EXHIBIT "C"

packaging and putting it out on the street.
Q Were all of the items, that you found in the bag in the bedroom closet, types of items that would be used in the distribution of heroin on the street?
A Yes, sir.
Q Were any of those items processed for fingerprints at all?
A Yes, sir.
Q Were there any fingerprints recovered?
A Yes.
Q And whose prints were recovered?
A There is a positive identification of Oscar Caba's #8 finger, which would be the left hand middle finger, on the bottom of one of the pads of the bright colored paper.
Q Now, you also mentioned that from in the bedroom, from behind a console TV, you seized a bag, or a bag of crack cocaine was seized, is that correct?
A Yes, sir.
Q And crack cocaine is cocaine base in the form of crack cocaine as it's sold on the street, is that correct?
A That's correct.

**exhibit 'd'**

separate packages. One was a large zip lock Baggie that had a smaller Baggie of 22.2 grams of heroin according to the lab analysis. Plus another 3.6 grams of heroin that was in the blue packets that were then wrapped in the bright pink packets, fifty bags each with another twelve extra.

Q. So that gave you a total of how much heroin?

A. 25.8 grams of heroin according to the lab analysis.

Q. When you say the lab analysis, do you mean the DEA results obtain by a forensic chemist?

A. Yes.

Q. Was there any other sort of drugs seized from the bathroom that day?

A. Right next to that exhibit was a white hospital towel. Inside that were numerous bags of an off white powder. According to the lab analysis, the DEA lab, that was 867.1 grams of cocaine.

Q. Was that 867.1 grams?

A. Grams.

Q. A had a field-test been performed on that cocaine?

**EXHIBIT "D"**

EXHIBIT "E"

A. Yes.

Q. What was the result of the field-test on that cocaine?

A. I did a field-test that morning on one of the bags within the towels wrapped around. And the field test was positive for the presence of heroin.

Q. Can you explain to the Grand Jurors the difference between your field-test result and the result obtained by the forensic chemist?

A. I did a Marquis Reagent Field-Test on that exhibit. It came back positive. * (What I think was an error on my part,) I don't believe that the field-test itself is wrong. (*I believe it was an error on my part) Back at the office I had tested the bag of heroin that was seized right next to it. It was positive. I put the little spoon down. Little spoons come with the field-test. I then did a field-test from one bag or the next. I believe I mistakenly picked up the same spoon and took a little, and that there was heroin from the first baggy on that. So, when it touched the Marquis Reagent, it gave

**EXHIBIT "E"**

EXHIBIT "F"

Do you recall whose print, and what item it was found on?
A. Yes, ma'am. On one of the pads of paper on the back of the cardboard there was a fingerprint that was identified as Oscar Caba's. It was the number eight finger, which is the middle finger of the left hand, I believe.
Q. Have you since that time received any additional information concerning Mr. Caba's fingerprints?
A. Yes. I just received from our lab, the fingerprint specialist in the DEA lab in New York. I had requested analysis on the Baggies. They have obtained three latent fingerprints from some of the Baggies that contained some of the 867.1 grams of cocaine, and three prints were identified as belonging to Oscar Caba.
There were also two latent fingerprints obtained from one of the shopping bags that some of this 867.1 grams of cocaine from that Ames shopping bag. There were two fingerprints that developed that

**EXHIBIT "F"**

EXHIBIT "G"

## I. STATEMENT OF JURISDICTION

This is a direct appeal from a sentence imposed in a criminal case. The district court (Torres, J.) had jurisdiction over the case pursuant to 18 U.S.C. § 3231. The court sentenced defendant on March 31, 2000 and entered a judgment of conviction on April 20, 2000. Defendant filed a timely notice of appeal on March 31, 2000. This Court has jurisdiction over the appeal pursuant to 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## II. STATEMENT OF THE ISSUES

1. Whether defendant's <u>Apprendi</u> claims can survive plain error review given that the sentencing factors he identifies: (a) had no effect whatsoever on the applicable statutory maximum penalty; and (b) only influenced the sentence he received within that statutory maximum.

2. Whether the district court clearly erred in including in its drug weight calculations 143.7 grams of crack cocaine, where: (a) the crack constituted part of the inventory of defendant's drug business; and (b) defendant was linked to the crack by fingerprint evidence and other evidence.

3. Whether the district court clearly erred in finding that defendant was an organizer or leader under USSG § 3B1.1(c).

**EXHIBIT "G"**

# CERTIFICATE OF SERVICE

I, Oscar Caba, Defendant-Appellant, in the enclosed motion do hereby certify that a true and correct copy of this 2255 motion was mailed to the United States Attorney, Kenneth P. Madden, to the United States Attorney's Office, Fleet Center, 50 Kennedy Plaza, 8th floor, Providence, Rhode Island on this 21st, day of January, 2005.
Certification No. 7004-1160-0007-0140-3639

In Ayer, Massachusetts, this th day of January, 2005.

Oscar Caba

Oscar Caba, Pro-Se
Defandant-Appellant, 04697-070
Federal Medical Center, Devens
P.O, Box 879
Ayer, MA. 01432

7004 1160 0007 0140 3639

## CERTIFIED MAIL™ RECEIPT

*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

OFFICIAL USE

OSCAR CABA 04697-070 HB

OSCAR CAba 04697-070

| | |
|---|---|
| Postage | $ 2.51 |
| Certified Fee | 2.30 |
| Return Reciept Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.81 |

Postmark Here

AYER MA 01432 USPS JAN 21 2005

Sent To Kenneth P. Madden, united states Attorney

Street, Apt. No.; or PO Box No. Fleet Center, 50 Kennedy Plaza 8 Fl.

City, State, ZIP+4 Providence, Rhode Island 02903

PS Form 3800, June 2002 See Reverse for Instructions

CA 05 026T