IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| OSCAR CABA | ) | |
| | ) | |
| vs. | ) | C.A. No. 05-026T |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Comes now the United States of America, by and through its attorneys, Robert Clark Corrente, United States Attorney, and Kenneth P. Madden, First Assistant U. S. Attorney, and objects to petitioner's Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C. § 2255 for those reasons stated in the accompanying memorandum.

Respectfully submitted,

UNITED STATES OF AMERICA
By its attorneys,

Robert Clark Corrente
United States Attorney

Kenneth P. Madden
Kenneth P. Madden
First Assistant U.S. Attorney



3

CERTIFICATION

I hereby certify that on the 14th day of March, 2005, I mailed a true copy of the Within Government's Objection To Petitioner's Motion To Vacate, Set Aside Or Correct Sentence Pursuant To 28 U.S.C. § 2255, ordinary mail and postage prepaid, to:

Oscar Caba
Reg. No. 04697-070
Federal Medical Center - Devens
P.O. Box 879
Ayer, MA 01432

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| OSCAR CABA | ) | |
| | ) | |
| vs. | ) | C.A. No. 05-026T |
| | ) | |
| UNITED STATES OF AMERICA | ) | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF ITS OBJECTION TO PETITIONER'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255**

Introduction

Petitioner Oscar Caba (Caba) files this motion pursuant to 28 U.S.C. § 2255. In reliance upon Blakely v. Washington, 124 S.Ct. 2531 (2004), Caba argues that his sentence violates the Sixth Amendment because the sentence was based, in part, upon crack cocaine conduct which he never admitted and of which the jury found him not guilty. He further seems to argue, reciting a laundry list of items which need not be repeated here, that his counsel rendered ineffective assistance.

Travel

The government recites those facts proved to the jury. On about ten occasions between 1997 and 1998, Debra Nogueira purchased heroin from Caba for herself and others. Nogueira would page Caba, Caba would phone her back, and Nogueira would then place her order with Caba. In at least six of these transactions, Caba's co-defendant, Manolo Vargas, delivered the heroin for Caba.

On December 16, 1998, Caba and Vargas met with Nogueira and asked her whether she knew of anyone who was interested in purchasing " blow," the street name for cocaine. Caba praised the quality of the product. When Nogueira remarked that she had not known that Caba and Vargas dealt in cocaine, Vargas explained that he and Caba had just returned from New York, implying that they had obtained the cocaine there. Later that day, Caba and Vargas gave Nogueira two sample bags of heroin for use in enticing a potential customer Nogueira had spoken of. The next day, Nogueira turned this heroin over to Special Agent Kathleen Kelleher of the Drug Enforcement Administration (DEA).

On February 1, 1999, Agent Kelleher and Nogueira paged Caba. In subsequent conversations, Kelleher posed as a drug purchaser and Nogueira acted as an intermediary. Kelleher and Nogueira spoke with Caba about a possible 10 gram heroin purchase by Kelleher at a price of $105 per gram. Agent Kelleher had follow-up conversations with Caba on February 4, 5, and 10, 1999. During those conversations, which were recorded, Kelleher and Caba made veiled references to the proposed heroin purchase. They ultimately agreed to meet in the afternoon of February 10, 1999 at a liquor store on Manton Avenue in Providence. The purpose of the meeting was for Kelleher to purchase 10 grams of heroin from Caba.

Kelleher arrived at the liquor store at about 3:15 p.m. and paged Caba. Five minutes later, Caba pulled into a nearby parking lot in a Honda, with Vargas in the passenger seat and an unidentified man in the back seat. Vargas got out of the Honda and told Kelleher that he was Caba's cousin and that Kelleher should follow Caba. After following the Honda through several streets, Kelleher pulled up alongside it and spoke with Caba. At that point, Caba told Kelleher that they would show her where she could meet Vargas for future any purchases. Caba parked

the Honda on Penn Street, and Kelleher stopped behind him. Vargas told Kelleher to wait. The three men then drove off in the Honda. While Kelleher waited, other agents conducting surveillance saw the three men in the Honda drive a short distance to 95 Ring Street. The three men then entered the house. After a few minutes, Vargas emerged from the house and walked to where Kelleher was parked. Vargas gave Kelleher a package containing 9.6 grams of heroin. Kelleher gave Vargas $ 1,050 in cash. Referring to Caba, Vargas said "that's the big, that's [the] guy I work for." Vargas showed Kelleher where she could meet him for future purchases.

In March 1999, Agent Kelleher observed Caba leaving 95 Ring Street on two occasions. She also saw the Honda and Caba's Cadillac parked at 95 Ring Street. Also in March 1999, Kelleher saw the Honda and defendant's BMW parked at 17 Everett Street in Pawtucket. On March 26, 1999, agents searched 95 Ring Street pursuant to a warrant. When they entered the house, they encountered Vargas and a woman. In the bathroom, agents found a large plastic ziplock bag containing a total of 25.8 grams of heroin. The heroin was packaged in 312 glassine bags. Three hundred of these glassine bags were divided into 50-bag units known as "browns." Each of the six " browns" was wrapped in hot pink colored paper. Twelve of the glassine bags were loose within the ziplock bag. Also in the bathroom, agents found several plastic bags that were wrapped in duct tape and stuffed inside a towel that was also wrapped in duct tape. The plastic bags inside the towel contained a total of 867.1 grams of cocaine powder. At least seven of defendant's fingerprints were found on these plastic bags. In a large shopping bag in the bedroom closet, agents discovered drug processing and packaging materials, including cocaine and heroin cutting agents, a grinder, two sifters, plastic tape, plastic bags, a scale, and pads of bright-colored paper. The bright-colored paper resembled the paper that had been used to wrap

the six "browns" of heroin found in the bathroom. One of defendant's fingerprints was found on the cardboard backing of one of these pads of paper. Behind a television in the bedroom, agents found a ziplock plastic bag. Inside the ziplock bag there were smaller plastic bags containing a total of 66.9 grams of powder cocaine and 143.7 grams of crack cocaine. At least one of defendant's fingerprints was found on one of the bags containing powder cocaine.

Agents arrested Caba in the bedroom of his apartment at 17 Everett Street in Pawtucket. In the bedroom, agents found $4,350 in cash . No cash had been found at 95 Ring Street. Agents also found the pager that defendant had used to set up the February 10 transaction with Kelleher. Information stored in the pager's memory indicated that shortly after the search team entered 95 Ring Street, someone at 95 Ring Street (possibly the woman who had been sleeping there with Vargas) had paged defendant with the message "911." This was an apparent attempt to warn defendant that the jig was up.

Subsequent to Caba's arrest, the grand jury returned a four-count Indictment charging Caba and Vargas with three counts of heroin trafficking. Vargas alone was charged in the fourth count with trafficking in cocaine base. On May 26, 1999, the grand jury returned a six-count Superseding Indictment against Caba and Vargas. The superseding indictment resulted from the receipt of the fingerprint analyses of the various seized plastic bags and from a discovery by Agent Kelleher that a drug analysis report contradicted her earlier grand jury testimony, given prior to the laboratory analysis, that the substance found in the Ring Street bathroom field-tested as heroin. The report showed that the substance was actually cocaine powder. The superseding indictment charged Caba and Vargas with conspiracy to traffick in cocaine and heroin; distribution of 9.6 grams of heroin; possession with intent to distribute 25.8 grams of heroin;

possession with intent to distribute 934 grams of cocaine powder; and possession with intent to distribute 143.7 grams of cocaine base.

Vargas pled guilty prior to trial. Prior to Caba's trial, the government filed a sentencing enhancement information pursuant to 21 U.S.C. § 851 alleging a prior drug conviction. At trial, Caba called Vargas and Jazmin Goris, Caba's girlfriend, as witnesses.

After the six-day trial, the jury convicted defendant on all counts except for the cocaine base trafficking count. At sentencing, the Court found that the 143.7 grams of crack cocaine was properly included in the drug weight calculation as relevant conduct. The Court also found that Caba was an organizer or leader for purposes of U.S.S.G. § 3B1.1(c). The Court then sentenced Caba to concurrent sentences of 293 months of imprisonment to be followed by eight years of supervised release. Caba appealed to the First Circuit Court of Appeals raising issues that the inclusion of the crack cocaine as relevant conduct and a role-in-the-offense determination violated Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000), and also that these determinations were not supported in the record. The Court of Appeals rejected these arguments and affirmed the conviction on March 2, 2001. United States v. Caba, 241 F.3d 98 (1st Cir. 2001). Caba did not file a writ certiorari, nor has he filed a previous 28 U.S.C. § 2255 motion.

Argument - The Sixth Amendment Violation

In United States v. Booker, 125 S.Ct. 738 (2005), the Court held that the Sixth Amendment, as construed in Blakely, applies to the Sentencing Guidelines. The Court reaffirmed the defendant's right to have the jury find the existence of any fact, except a prior conviction, that the law makes essential to a defendant's punishment. The Court noted that the

mandatory nature of the guidelines combined with judicial fact-finding implicated the Sixth Amendment. The Court concluded that the guidelines are only advisory in nature.

The holding of Booker derives from the holdings in Blakely and Apprendi. The holdings of Blakely and Apprendi were new constitutional rules of criminal procedure. Under Teague v. Lane, 489 U.S. 288 (1989), they are not retroactively applicable to cases that became final before those decisions were announced. See Schriro v. Summerlin, 124 S. Ct. 2519, 2524-26 (2004) (Teague bars retroactive application of Apprendi-based death penalty decision of Supreme Court in Ring v. Arizona, 536 U.S. 584 (2002)); Sepulveda v. United States, 330 F.3d 55, 59-63 (1st Cir. 2003) (Apprendi is not retroactively applicable under Teague); Orchard v. United States, 332 F. Supp.2d 275, 277 (D. Me. 2004) (holding that Blakely is not retroactively applicable under Teague and collecting cases on point); United States v. Stancell, 346 F. Supp.2d 204 (D.D.C. 2004). Caba's indictment and trial complied with the holding of Apprendi. His conviction was final before both Blakely and Booker were decided. Booker is itself a new constitutional rule of criminal procedure, and like Blakely and Apprendi, should not be applied retroactively. See Varela v. United States, __F.3d__, 2005 WL 367095 (11th Cir., decided 2/17/2005) (Booker does not apply retroactively to cases on collateral review); United States v. McReynolds, 397 F.3d 479 (7th Cir. 2005) (Booker does not apply to criminal cases that became final before January 12, 2005).

Caba's Ineffective Assistance Of Counsel Argument Is Time-Barred For Failure To Comply With The Period Of Limitations

Section 2255 imposes a one-year limitations period. In pertinent part, the statute states:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of -
>
> (1) the date upon which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255.

The one-year period of limitations bars Caba from relief. First, Caba's appeal was denied on March 2, 2001. Though Caba did not seek the issuance of a writ of certiorari, his one-year period commenced on June 1, 2001. The instant petition was not filed until January 21, 2005, at least three and one-half years after Caba's conviction became final. Second, Caba does not allege any governmental action which prevented Caba from making his motion earlier. Third, Caba does not allege any new facts supporting his claim which, through the exercise of due diligence, could not have been discovered earlier. Finally, as noted above, Booker, Blakely and Apprendi have not been applied retroactively to matters on collateral review.

Conclusion

For those reasons set forth herein, the petition should be denied and Judgment entered for the United States.

Respectfully submitted,

Robert Clark Corrente
United States Attorney

Kenneth P. Madden
First Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of March 2005, I served a copy of the within Government's Memorandum In Support of Its Objection To Petitioner's Motion To Vacate, Set Aside, Or Correct Sentence Pursuant To 28 U.S.C. § 2255, by ordinary mail and postage prepaid, to:

Oscar Caba
Reg. No. 04697-070
Federal Medical Center - Devens
P.O. Box 879
Ayer, MA 01432